IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

FILED 2009 FEB 26 PM 2: 24
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

MARY NASH

Plaintiff,

CASE NO: 6-09-CV-382-ORL-28GJK

v.                                                                   **COMPLAINT**

MIGUEL A. MEDINA, M.D., P.A.

Defendant.

_____ /

**COMES NOW** the Plaintiff, MARY NASH, by and through her undersigned counsel, and sues the Defendant, MIGUEL A. MEDINA, M.D., P.A., (herein after referred to as "Dr. Medina") and in support of her two causes of action, states the following:

### NATURE OF THE CASE

1. This action is brought by the Plaintiff against the Defendant who refused to provide effective communication and then discharged as a patient the Plaintiff MARY NASH because of her disability. The Plaintiff experienced humiliation and discrimination in violation of her civil rights through Defendant's policies and practices of discrimination on the basis of disability, as well as pain and suffering, fear and anxiety due to the delay of her services.

2. This action claims that Defendants violated the Rehabilitation Act, 29 U.S.C. § 794, Section 504.

### PARTIES

3. Plaintiff MARY NASH (hereafter "NASH") is a resident of Titusville, FL,

SCANNED

4. Plaintiff is deaf and communicates in American Sign Language and is a qualified individual with disabilities under the definitions of the Rehabilitation Act and the Americans with Disabilities Act.

5. NASH has a severe heart condition which requires ongoing monitoring of her implanted pacemaker and ongoing treatment and medication.

6. Defendant, Dr. Miguel Medina, a is a Florida corporation licensed and doing business in Brevard County, Florida, located at 119 South Park Avenue, Titusville, Florida 32796.

7. Defendant, Dr. Miguel Medina, is a recipient of federal financial assistance by virtue of its acceptance of Medicare and Medicaid payments.

## FACTS

8. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance". 29 USC §794.

9. Plaintiff, MS. NASH, is a resident of Titusville, Florida and is deaf. Accordingly, NASH is a qualified individual with a disability.

10. After researching area doctors who would accept her insurance for approximately one full year, NASH learned that Dr. Medina's office would accept her insurance, and made an appointment via Sorrenson Relay, an accessible telephone service used exclusively by deaf people, to see Dr. Medina. Dr. Medina's office is approximately five miles from NASH'S home.

11. NASH advised that she was deaf, as did the Sorrenson Relay operator, and requested an interpreter for her doctor appointment through a sign language interpreter. The

front desk receptionist, or whomever interacted with NASH during that Sorrenson Relay call, advised that an interpreter would be present.

12. When NASH arrived for her first appointment, in or near April or May of 2008, she was advised by a front desk receptionist that they had forgotten to request an interpreter. NASH'S fiancé tried his best to interpret during this visit, although NASH wanted and requested an interpreter. NASH'S fiancé is not a certified interpreter, and conflicts of interest and emotional involvement make interpreting by family members specifically unfavorable.

13. NASH had many questions regarding her care and treatment and wanted to know more about the risks, necessity and scope of that care and treatment but was unable to inquire because she did not have effective communication with Dr. Medina.

14. Showing full knowledge that NASH was deaf, Dr. Medina's office called NASH via Sorrenson Relay to schedule a follow up appointment in June of 2008. NASH requested an interpreter during that call but Dr. Medina's office refused her request. NASH then visited the doctor's office and delivered photocopies of the ADA and other materials setting forth her right, as a deaf patient, to a reasonable accommodation. Dr. Medina's office still maintained that no interpreter would be scheduled for her June appointment.

15. NASH again reluctantly appeared for her June appointment with her fiancé, but was relieved to find an interpreter had been scheduled after all and was present at Dr. Medina's office. Effective communication was had between Dr. Medina and NASH, and Dr. Medina prescribed continued medication and treatment.

16. On July 1, 2008, Dr. Medina sent a correspondence to NASH discharging her as a patient and stating "I will no longer be available to render professional medical services to you."

17. Dr. Medina is "available" to take other patients, he is simply "unavailable" to continue providing services to NASH because she is deaf and requires a reasonable accommodation.

18. NASH contacted Dr. Medina's office via Sorrenson IP, a computer based relay service, because she was confused as to why she had been discharged as a patient. When she asked why she had been discharged, Dr. Medina's office manager, "Diane" stated "There is no reason. I can't give a reason. There is none." NASH inquired "Why is that?" and "Diane" responded "Because I don't have to give a reason. The law does not require me to give a reason." The manager ended the call by stating "You know I'm sorry, there's nothing more that I can say. Thank you. Byebye." And hung up the phone while NASH still pleaded "Are you still there? Are you still there?"

19. NASH was damaged by Dr. Medina's discriminatory acts. She cried because she was shocked and very upset to learn that she had, for the very first time, been excluded from a public accommodation because of her disability. She is humiliated and ashamed and is fearful that she may suffer the same unfair and discriminatory treatment again, and saddened to think that others may suffer similar discrimination at the hands of Dr. Medina.

20. All of the above acts, both of omission and commission, were intentional acts of

discrimination and each and all were a proximate cause of the damages suffered by the Plaintiff.

21. Defendant willfully, knowingly and intentionally discriminated against the Plaintiff in violation Rehabilitation Act, 29 USC § 794, and caused the Plaintiffs to suffer and continue to suffer mental and physical pain and anguish.

22. Plaintiff has retained the services of The Law Offices of Matthew W. Dietz, P.L. and has agreed to pay them a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred in this action.

23. Plaintiff is deaf and her disability substantially limits major life activities, including her ability to effectively communicate with others who do not know sign language. Therefore, Plaintiff is considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8). Plaintiff is otherwise qualified under Section 504 of the Rehabilitation Act because she meets the essential eligibility requirements for Defendant's services at all time material hereto.

24. Defendant is a recipient of federal financial assistance because of their acceptance of Medicare and Medicaid funds.

25. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

26. Additionally, the Defendant also denied Plaintiff services that it made available to non-disabled patients.

27. Defendant violated Plaintiff's rights through their repeated refusal to reasonably accommodate Plaintiff with appropriate auxiliary aids and services and by excluding Plaintiff from Defendant's practice.

28. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer distress and damages due to Defendant's violations of Section 504.

**WHEREFORE,** Plaintiff respectfully pray that this Court grant the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act and award compensatory damage, reasonable costs and attorneys' fees and award any and all other relief that may be necessary and appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITTED.**

Dated this 23 day of February, 2009

> LAW OFFICES OF MATTHEW W. DIETZ, P.L.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Phone (305) 669-2822
> Facsimile (305) 442-4181
> E-Mail: mwalrath@usdisabilitylaw.com
>
> BY: _____
> MATTHEW W. DIETZ, ESQ
> FL. BAR NO.: 0084905