# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARY NASH,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-382-Orl-28GJK**

**MIGUEL A. MEDINA, M.D., P.A.,**

        **Defendant.**

_____

# ORDER

Mary Nash ("Plaintiff") brings the instant action against Miguel A. Medina, M.D., P.A. ("Defendant"), contending that Defendant discriminated against her on the basis of her disability in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiff also contends that Defendant retaliated against her in violation of the Rehabilitation Act. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Doc. 28). Defendant has filed a Response (Doc. 32), Plaintiff has filed a Reply (Doc. 44), and the motion is ripe for ruling. Having considered the parties' submissions and applicable law, the Court concludes that Plaintiff's motion must be denied.

## I. Background

Plaintiff, who is in her late twenties, is deaf. After moving to Florida from Kentucky in approximately 2007, Plaintiff had difficulty finding a physician who would accept her Medicaid insurance. However, she eventually learned that Defendant—an internal medicine practice—accepted Medicaid, and she scheduled an appointment with Dr. Miguel Medina

("Dr. Medina")[1] for May 8, 2008 to address lower back pain.[2] (Pl. Dep. at 38). Dr. Medina was previously employed at a physician group practice called Health Net, but he had started his own practice on March 1, 2008. (Medina Dep. at 13).

During the May 8 appointment, no sign language interpreter was present,[3] and Plaintiff's fiancé, William Deters—who is hard of hearing but not deaf—interpreted on Plaintiff's behalf. (Pl. Dep. at 38). However, communication at that appointment was reportedly somewhat difficult, and the appointment was lengthy due to the communication issues. (See, e.g., Medina Dep. at 25). At the end of that appointment, a follow-up appointment was scheduled for June 23, 2008. (Pl. Dep. at 41).

At some point between the first and second appointments, a dispute arose between Plaintiff and Defendant regarding whose responsibility it was to provide a sign-language interpreter for Plaintiff's second visit. Defendant's office manager, Diane Barthel, testified in her deposition that sometime after the first appointment, a woman from what Barthel understood to be the "American Civil Liberties Council" called the office and "threatened us with a big fine if we didn't provide an interpreter for" Plaintiff. (Barthel Dep. at 22). This call

---

[1]The Defendant in this case is Miguel A. Medina, M.D., P.A., and is referred to herein as "Defendant." Dr. Miguel Medina, the individual, is referred to as "Dr. Medina."

[2]Plaintiff also wears a pacemaker and suffers from a heart condition called QT syndrome. However, she did not seek Mr. Medina's care regarding her heart, and when she first saw Dr. Medina she was already being treated for that condition by a cardiologist, Dr. Guerrero. (Pl. Dep. at 40-41).

[3]Plaintiff testified in her deposition that she did not request a sign language interpreter for her first appointment with Dr. Medina. (Pl. Dep. at 61). Her fiancé, however, testified that an interpreter was requested for that first appointment but Defendant refused to provide one. (Deters Dep. at 20-21).

came in, according to Barthel, without any prior correspondence or communication from Plaintiff. (Id.).

After Barthel initially spoke to the caller, Dr. Medina took the call. (Id. at 23). After the call, Dr. Medina told Barthel that they had been threatened with a big lawsuit if they did not provide an interpreter for Plaintiff's next visit. (Id.). Because of that phone call, Dr. Medina decided that an interpreter would be provided for Plaintiff for the June 23 appointment. (Id. at 24, 34; Medina Dep. at 32). Another employee of the Defendant arranged for an interpreter to be present.[4] (Barthel Dep. at 36-37).

At the June 23 appointment, a sign language interpreter provided by Defendant translated for Plaintiff. Defendant paid $157.50 for the services of that interpreter. (Ex. H to Doc. 28). It is undisputed that Defendant received only $95.00 from Plaintiff's insurance for the office visit, and thus Defendant suffered a loss of $62.50 for treating Plaintiff on June 23. (Doc. 28 at 18; Medina Dep. at 62-63).

One week after Plaintiff's second appointment, in a letter dated July 1, 2008, Dr. Medina informed Plaintiff: "I find it necessary to inform you that effective August 01, 2008, I will no longer be available to render professional medical services to you." (Ex. I to Doc.

---

[4]The details of how the interpreter issue came to a head are disputed. Two of Defendant's employees—Barthel and Medina—testified to the version of events recounted in the text. Plaintiff and her fiancé give a different account, claiming that they called Defendant's office and asked that an interpreter be provided for the June 23 visit and were told that one would not be provided. Deters testified in his deposition that he then contacted a woman named Emily in Kissimmee regarding interpreter requirements, (Deters Dep. at 18, 20), and Emily is apparently the woman who called Defendant's office. It is not disputed, however, that after the phone call from Emily, Defendant agreed to provide an interpreter for the June 23 office visit at its own expense.

28).[5] When Plaintiff received this letter, she was hurt, confused, and upset. (Pl. Dep. at 39). She called Defendant's office and asked why Dr. Medina would no longer be providing her with medical services, and Barthel would not give her a reason. (Id. at 40; Tr. of Telephone Call, Ex. J to Doc. 28). Plaintiff began treatment with another medical provider, Dr. Pagan, approximately one month later. (Pl. Dep. at 46).

Plaintiff filed this lawsuit on February 26, 2009. (Doc. 1). In her Amended Complaint, Plaintiff alleges that Defendant "refused to provide effective communication and then discharged [her] as a patient . . . because of her disability," (Doc. 20 at 1), and she asserts two claims. In Count I, Plaintiff alleges that Defendant violated section 504 of the Rehabilitation Act by repeatedly refusing "to reasonably accommodate Plaintiff with appropriate auxiliary aids and services and by excluding Plaintiff from Defendant's practice." (Id. at 6). In Count II, Plaintiff alleges that Defendant retaliated against her in violation of the Rehabilitation Act by terminating her from its practice after Defendant received a telephone call on Plaintiff's behalf regarding provision of a sign language interpreter. (Id. at 6-7). Plaintiff seeks a declaratory judgment, compensatory damages,[6] and attorney's fees. (Id. at 8).

---

[5] Dr. Medina testified in his deposition that sometime after the June 23 appointment and before his decision to discharge Plaintiff from the practice, he talked to a lawyer at a local hospital and obtained advice. (Medina Dep. at 33-35, 49-50).

[6] It is not clear what amount or elements of damages Plaintiff is seeking. In the Joint Final Pretrial Statement (Doc. 48), she did not list the elements of her damages or the amount sought as required by Local Rule 3.06(c)(7). The only amounts listed in the Joint Final Pretrial Statement are estimates of attorney's fees incurred—$75,000 by each party. (See Doc. 48 at 12). At the conclusion of this Order, Plaintiff shall be ordered to supplement the Pretrial Statement with the elements and amount of damages she seeks.

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.'  Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794

(10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

### B. The Merits of Plaintiff's Motion

Plaintiff seeks entry of summary judgment in her favor on both counts of her Amended Complaint. However, as set forth below, Plaintiff has not established entitlement to judgment in her favor on either count.

### The Rehabilitation Act

Plaintiff brings both of her claims under section 504 of the Rehabilitation Act, which provides in part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "Program or activity" is defined in the Act as including "an entire corporation, partnership, or other private organization, or an entire sole proprietorship, . . . which is principally engaged in the business of providing . . . health care, . . . any part of which is extended Federal financial assistance." Id. § 794(b)(3)(ii).

The administrative regulations pertinent to section 504 and regarding health care providers are contained in Subpart F of Part 84 of Title 45 of the Code of Federal Regulations. These regulations are recognized "as an important source of guidance on the meaning of § 504." Alexander v. Choate, 469 U.S. 287, 304 n.24 (1984). One regulation states in part that "[i]n providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap . . . [d]eny a qualified handicapped person these benefits or services." 45 C.F.R. § 84.52(a)(1) (2007). Additionally, this regulation addresses

provision of "auxiliary aids" to handicapped persons, stating:

> (1) A recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question.
>
> (2) The Director may require recipients with fewer than fifteen employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits and services.
>
> (3) For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision.

45 C.F.R. § 84.52(d).

Although Plaintiff has brought both of her claims under the Rehabilitation Act, in their motion papers both parties discuss the claims as if they were brought under the Americans With Disabilities Act of 1990 ("ADA"). Plaintiff relies at times on ADA provisions and regulations without mentioning Rehabilitation Act provisions and regulations,[7] and she asserts that these two laws "are interpreted identically." (See Doc. 28 at 12). However, the cases cited by Plaintiff for the proposition that the laws are "interpreted identically" are employment discrimination cases, not denial-of-services cases. See, e.g., Waddell v. Valley Forge Dental Assocs. Inc., 276 F.3d 1275 (11th Cir. 2001); Cash v. Smith, 231 F.3d 1301 (11th Cir. 2000). Section 504 of the Rehabilitation Act specifically incorporates the ADA's standards in employment discrimination cases. 29 U.S.C. § 794(d) ("The standards used

---

[7]For example, Plaintiff cites 45 C.F.R. § 84.52(a), but she then shifts to citing ADA prohibitions with regard to auxiliary services and "undue burden" rather than citing 45 C.F.R. § 84.52(d), which plainly applies to claims bought under section 504 of the Rehabilitation Act.

to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA] . . . , as such sections relate to employment."). Section 504 does not, however, expressly incorporate the ADA's provisions outside the employment discrimination context, though section 504a does—for cases under section 504 involving recipients of federal financial assistance—incorporate the "remedies, procedures and rights" of title VI of the Civil Rights Act of 1964, see 29 U.S.C. § 794a(a)(2). Moreover, even in the employment context, significant differences between the two statutes continue to be observed and maintained despite the incorporation of the ADA's "standards" into Rehabilitation Act employment claims. See Soledad v. U.S. Dep't of Treasury, 304 F.3d 500 (5th Cir. 2002) (holding that Rehabilitation Act employment discrimination claimant must, in accordance with plain language of the statute, establish that he suffered discrimination "solely" by reason of disability rather than merely establishing that disability was "a motivating factor" as under the ADA).

Additionally, with regard to Count II Plaintiff avers that the ADA's anti-retaliation provision has been incorporated into the Rehabilitation Act. (Doc. 28 at 20). However, in support of this proposition, she cites 29 U.S.C. § 794(d), quoted above, which is limited to the employment discrimination context.[8] Nevertheless, courts have recognized that the

---

[8] Plaintiff does cite one unpublished Eleventh Circuit case—Albra v. City of Fort Lauderdale, 232 F. App'x 885, 891 (11th Cir. 2007)—that states that the Rehabilitation Act incorporates the anti-retaliation provision of the ADA, and that case was not an employment discrimination case. However, Albra relied, without discussion or analysis, for that proposition on an employment discrimination case, Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997), and Albra is unpublished and therefore is not considered

Rehabilitation Act bars retaliation for the making of complaints even outside of the employment context, relying not on the ADA but on the Rehabilitation Act's incorporation of Title VI of the Civil Rights Act of 1964 and its implementing regulations. See, e.g., Hoyt v. St. Mary's Rehabilitation Ctr., 711 F.2d 864, 867 (8th Cir. 1983) (citing 29 U.S.C. § 794a(a)(2) & 45 C.F.R. §§ 84.61, 80.7).

In sum, while the Rehabilitation Act and the ADA serve similar ends and are similar in many ways, they remain distinct statutes with distinct provisions. These two statutes—as well as other anti-discrimination laws—are sometimes interpreted and applied in the same manner by courts, but Plaintiff's wholesale reliance on ADA case law is improper. While Plaintiff has not established entitlement to summary judgment under either statute in any event, her claims have been brought only under the Rehabilitation Act and they will be analyzed as such both in this Order and at trial.

### 1. Disability Discrimination (Count I)

In Count I of the Amended Complaint, Plaintiff asserts that Defendant violated section 504 of the Rehabilitation Act by repeatedly refusing "to reasonably accommodate Plaintiff with appropriate auxiliary aids and services and by excluding Plaintiff from Defendant's practice." (Doc. 20 ¶ 27). Curiously, however, in her summary judgment motion Plaintiff states: "This matter *does not* involve the failure to provide auxiliary services to an existing patient, but rather the discharge of a patient because of her disability," (Doc. 28 at 16) (emphasis in original), but several lines later states, again with emphasis, that "**it is a**

---

binding precedent by the Eleventh Circuit. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

**different specific prohibition under the Americans with Disabilities Act to refuse to permit auxiliary aids or services**," (id.).  Thus, despite the allegation in the Complaint regarding refusal to provide auxiliary aids, Plaintiff's motion at times refers to—and indeed insists on—only a "discriminatory discharge" type of claim, but then also again refers to refusal "to permit auxiliary aids or services."  In the Joint Pretrial Statement, Plaintiff again refers to Defendant's "failure . . . to provide effective communication."  (Doc. 48 at 3).  Plaintiff's shifting position on this claim is perplexing; it will be addressed here as a denial-of-medical-services claim.

As noted earlier, section 504 provides in pertinent part that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  And, the regulations relating to section 504 state that a health care service provider receiving Federal financial assistance "may not, on the basis of handicap, . . . [d]eny a qualified handicapped person these benefits or services."  45 C.F.R. § 84.52(a)(1).

It is not disputed that Plaintiff is deaf and thus has a disability, nor is it disputed that Defendant has a contract with and receives payments from Medicaid—a fact that has been interpreted by most courts as satisfying the "receiving Federal financial assistance" requirement.  See, e.g., United States v. Baylor Univ. Med. Ctr., 736 F.2d 1039 (5th Cir. 1984).  However, Plaintiff has not established the absence of a genuine issue of material fact regarding whether she was terminated from Defendant's services "solely by reason of her disability" in violation of the Rehabilitation Act.

Plaintiff claims that she was discharged because of her disability, but Defendant has asserted three reasons for its discharge of Plaintiff: (1) that it could not afford to provide an interpreter because it—a new, solo practice that had been open for only a few months—was in dire financial condition and could not afford to lose money on Plaintiff's office visits; (2) that the threatening phone call it received caused a breakdown in the doctor-patient relationship; and (3) that Dr. Medina suspected that Plaintiff was a "drug seeker" who did not respond favorably to his referral of her to a pain management specialist. Plaintiff challenges the veracity of these assertions, but this issue cannot be resolved at summary judgment. And, although Plaintiff claims that she has "direct evidence" of discriminatory and retaliatory animus, she has not presented evidence that establishes, without the necessity "of any inference or presumption," discriminatory treatment—an exacting standard in this circuit. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Defendant's assertion that it could not afford to pay for an interpreter and that it discharged Plaintiff because she demanded that Defendant pay for an interpreter is not the equivalent of discharge due to deafness.

In sum, the record is replete with factual issues, and the legal issue of whether the Rehabilitation Act required a Defendant-provided interpreter at all certainly bears on the question of whether Defendant discharged Plaintiff "solely because of" her deafness. In this regard, Plaintiff has not established that the Rehabilitation Act requires a medical provider such as Defendant to provide, at its own expense, a sign language interpreter for a deaf patient. On its face, the regulation quoted earlier in this Order—45 C.F.R. § 84.52(d)—requires recipients of federal financial assistance with fifteen or more employees

to provide auxiliary aids where necessary and states that the Director of the Office of Civil Rights for the Department of Health and Human Services "may require" recipients with fewer than fifteen employees to provide auxiliary aids "where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services." The regulation then states what such auxiliary aids "may include."

It is far from clear that this regulation or any other legal authority required Defendant to provide Plaintiff with a sign language interpreter as she asserts. Though the Court makes no legal ruling on this point at this time, it is sufficient for purposes of disposing of Plaintiff's motion to state that Plaintiff has not yet established any such requirement. Plaintiff has not shown or even attempted to show that Defendant employed fifteen or more persons; indeed, on the contrary, the evidence in the record suggests that Defendant had only four employees. (See, e.g., Barthel Dep. at 6). If Defendant employed fewer than fifteen employees, the regulation does not impose an absolute requirement of provision of an auxiliary aid, and even if it did, the regulation does not state than an interpreter is the required auxiliary aid in all circumstances. See 45 C.F.R. § 84.52(d)(3) (setting forth what "auxiliary aids may include"). Additionally, even if Defendant were potentially required to provide an auxiliary aid of some kind, an issue remains as to whether provision of an auxiliary aid would "significantly impair" Defendant's ability to provide services as stated in the Rehabilitation Act regulation.

Plaintiff has not met her burden as the summary judgment movant, and her motion must be denied with regard to Count I.

2. Retaliation

As noted earlier, courts have recognized that retaliation claims may be brought under the Rehabilitation Act. See, e.g., Hoyt. However, summary judgment may not properly be granted on Plaintiff's retaliation claim because genuine issues of material fact remain regarding whether Plaintiff engaged in protected activity and whether Defendant terminated its provision of medical services to Plaintiff based on any such protected activity. As discussed earlier, Plaintiff has not presented legal authority supporting a per se entitlement under the Rehabilitation Act to an interpreter provided for and paid for by Defendant. Additionally, Defendant has asserted several reasons for its termination of its relationship with Plaintiff, and although Plaintiff challenges the credibility of those reasons, this issue cannot be decided on summary judgment. Plaintiff's motion is thus denied with regard to Count II of the Amended Complaint.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 28) is **DENIED** in all respects.

2. **On or before Friday, August 13, 2010**, Plaintiff shall file a statement of the elements and amounts of damages she will be seeking at trial.

3. This case remains set on the September 2010 trial calendar. A final pretrial conference will be scheduled by separate notice. The parties are encouraged to explore settlement of this matter and to advise the Court immediately if the need for a trial has been obviated.

**DONE** and **ORDERED** in Orlando, Florida this 9th day of August, 2010.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party